UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY DAWSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES INC.,<br><br>　　　　Defendant. | Case No. 3:20-cv-06736-WHO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 34 |

Plaintiff Courtney Dawson, who is deaf and non-verbal, was terminated as a driver for defendant Uber Technologies Inc. ("Uber") in Georgia. He alleges that the termination appeal process was not accessible given his disabilities and violated the Americans with Disabilities Act ("ADA"). Uber moves to compel arbitration based on the arbitration agreement that Dawson concedes is valid. If the Federal Arbitration Act does not apply, as Dawson argues, then Georgia state law does. In either scenario, arbitration would be compelled. Uber's motion is granted.

**BACKGROUND**

On May 13, 2019, Dawson created an account on Uber's Drivers App to become a driver with Uber. Declaration of Brad Rosenthal ("Rosenthal Decl.") [Dkt. No. 34-2] ¶ 15. To do so, he was required to agree to a Technology Services Agreement ("TSA") that had been in place since December 2015 (the "2015 TSA"). *See id.*; *id.* Ex. D. On November 27, 2019, Dawson agreed to another TSA (the "2019 TSA") [Rosenthal Decl. Ex. 3]. *Id.* ¶¶ 15, 17. There is no dispute that he had to agree to the TSAs to use the app and that he had the opportunity to review them before assenting. *See* Opposition to Motion to Compel ("Oppo.") [Dkt. No. 35] 6 ("Plaintiff does not dispute he had clicked on 'Yes, I Agree' on Defendant's mobile application upon being presented

with a Technology Services Agreement which included an arbitration provision."). Both TSAs contained arbitration agreements.

The 2019 TSA at sections 15.2 and 15.2.1 states in relevant part:

15.2 **Arbitration Provision.**

**IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW. YOU MAY CHOOSE TO OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE BELOW INSTRUCTIONS. THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST THE COMPANY. IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH THE COMPANY, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE OR REPRESENTATIVE LAWSUIT. THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.**

15.2.1 **How This Arbitration Provision Applies**

This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act (FAA). If notwithstanding the foregoing, the FAA does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply. Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with the Company or relationship with any of its agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and the Company, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use the Uber Services and Driver App as a driver, background checks, your privacy, your contractual relationship with the Company or the termination of that relationship (including post-relationship defamation or retaliation claims), the nature of your relationship with the Company (including, but not limited to, any

claim that you are an employee of the Company), trade secrets, workplace safety and health, unfair competition, compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods, retaliation, discrimination, or harassment and claims arising under the Telephone Consumer Protection Act, Fair Credit Reporting Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 8 U.S.C. § 1324b (unfair immigration related practices), Americans With Disabilities Act, Age Discrimination in Employment Act, Fair Labor Standards Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, federal, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with the Company or the termination of that relationship.

2019 TSA (emphasis in original) at 31–32.[1]

Dawson was provided an option to opt-out, detailed in section 15.2.8 of the TSA:

15.2.8 **Your Right To Opt Out Of This**

Arbitration Provision Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision (subject to the pending litigation provision in Section 15.2.2, and the limitations set forth in this Section 15.2.8). To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver-partner account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver-partner account, and the city in which you reside.

2019 TSA (emphasis in original) at 32. Dawson did not opt out. *See* Oppo. 6.

Dawson, who is deaf and non-verbal, resides in Georgia. He was an Uber driver until around December 10, 2019. Complaint ("Compl.") [Dkt. No. 1] ¶¶ 4, 11–12, 20, 24. He filed suit in September 2020, alleging that he was terminated due to negative rider ratings but was unable to take advantage of his opportunity to appeal his termination because Uber did not provide channels of communications accessible to people with his disabilities. *Id.* ¶¶ 23–24. He alleges disability discrimination in violation of the ADA. *Id.* ¶¶ 33–35.

Uber moves to compel arbitration of Dawson's claim and stay proceedings. Motion to Compel Arbitration ("Mot.") [Dkt. No. 34] 2. I held a hearing on April 5, 2021.

---

[1] Citations to exhibits are to the ECF-generated page number.

3

**DISCUSSION**

Uber argues that Dawson's claim must be submitted to arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA") and alternatively under the Georgia Arbitration Code, O.C.G.A. §§ 9-9-1 *et seq.* ("GAC"). Mot. 2. Dawson concedes that he agreed to the arbitration provision by agreeing to the 2015 and 2019 TSAs and did not opt out of them. *See, e.g.*, Oppo. 6. He does not contend that the arbitration agreement is invalid or unenforceable. And he does not dispute that his ADA claim is covered by the arbitration agreement.

Dawson's sole argument is that the FAA itself exempts him with its provision that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Uber drivers, Dawson urges, are transportation workers engaged in interstate commerce. District courts across the country have divided on whether "personal passenger-transportation providers" ("PPTP")—drivers for services like Uber or Lyft—fall into Section 1's exception. *Compare Islam v. Lyft, Inc.*, 2021 WL 871417, at *14 (S.D.N.Y. Mar. 9, 2021), *Gonzalez v. Lyft, Inc.*, 2021 WL 303024, at *2 (D.N.J. Jan. 29, 2021), and *Cunningham v. Lyft, Inc.*, 450 F. Supp. 3d 37, 48 (D. Mass. 2020) (holding that PPTP are exempted from the FAA), *with Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 932 (N.D. Cal. 2020), *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 917 (N.D. Cal. 2020), and *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *9 (C.D. Cal. Jan. 7, 2020) (holding that they are not). The Ninth Circuit has not resolved the issue. The only time it has spoken was in denying a writ of mandamus; it explained that a district court's decision that PPTP did not fall into the exception may be in "tension" with recent rulings but "that tension is not enough to render the district court's decision [a] 'clear error as a matter of law.'" *In re Grice*, 974 F.3d 950, 959 (9th Cir. 2020).

Despite the parties' vigorous dispute over the FAA, Dawson's brief does not have one word to say about whether, in the alternative, Georgia state law requires that the arbitration

4

agreement be enforced. Consequently, even if I denied Uber's motion under the FAA, I would grant it under Georgia law for the reasons that follow.[2]

According to the 2019 TSA, the "contract is governed by the Federal Arbitration Act" but if "the FAA does not apply to this Arbitration Provision, the law pertaining to arbitration of the state where you [the driver] reside when you entered into this Agreement shall apply." 2019 TSA at 31. Dawson resided in Georgia at the time he signed both TSAs and worked as an Uber driver. Compl. ¶¶ 4, 12. Accordingly, the Agreement contemplates that Georgia law would govern if the FAA did not apply. Dawson does not argue that another state's law should apply despite the TSAs' language, that enforcement is precluded by another statute or by public policy, or that Georgia law is preempted.

Accordingly, I turn to whether Georgia law requires enforcement of the arbitration agreement. *Cf. Cilluffo v. Cent. Refrigerated Servs., Inc.*, 2012 WL 8523507, at *6 (C.D. Cal. Sept. 24, 2012), *order clarified*, 2012 WL 8523474 (C.D. Cal. Nov. 8, 2012) (compelling arbitration under Utah law when the FAA did not apply). It does. The GAC provides, "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit any controversy thereafter arising to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." GA. CODE ANN. § 9-9-3. The Georgia Assembly "established a clear public policy in favor of arbitration" in passing the GAC. *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 335 (2009) (internal quotation marks omitted). "If the court determines there is no substantial issue concerning the validity of the agreement to submit to arbitration or compliance therewith and the claim sought to be arbitrated is not barred by limitation of time, the court shall order the parties to arbitrate." GA. CODE ANN. § 9-9-6(a). *Cf. Gates v. TF Final Mile, LLC*, 2020 WL 2026987, at *6 (N.D. Ga. Apr. 27, 2020) (denying motion

---

[2] At the hearing, I asked Dawson's counsel if he had any argument against this conclusion. He asserted that only the FAA could apply because this case in federal court. When asked directly, he could not point to any authority for that position. As laid out in this Order, federal courts have compelled arbitration under state law.

5

to compel arbitration under the GAC because the agreement made no reference to state law applying).

Federal courts have compelled arbitration under state law without first determining whether the FAA exemption would apply. *See, e.g.*, *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 380–81 (E.D.N.Y. 2016); *Burgos v. Ne. Logistics, Inc.*, 2017 WL 10187756, at *4 (E.D.N.Y. Mar. 30, 2017); *U.S. ex rel. Mikes v. Straus*, 897 F. Supp. 805, 807 (S.D.N.Y. 1995). Indeed, the case Dawson most heavily relies on compelled arbitration under state law when the FAA did not apply. *See Islam*, 2021 WL 871417, at *14.

The dispute between Dawson and Uber belongs in arbitration. Dawson expressly concedes the agreement's validity, enforceability, and applicability. He agrees that he assented to it under standard contract principles and did not opt out. He does not offer any reason that Georgia arbitration law should not apply in the alternative to the FAA, as the agreement's text calls for. And he does not offer any reason that Georgia law would not encompass this dispute.

## CONCLUSION

Uber's motion to compel arbitration is GRANTED. This matter will be STAYED pending the outcome of the arbitration. The parties shall submit a joint status report every six months from the date of this Order until this matter is resolved. They shall notify the court within fourteen days of the resolution of the arbitration.

**IT IS SO ORDERED.**

Dated: May 7, 2021

William H. Orrick
United States District Judge